**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

A.W. and N.W., *individually and on behalf of B.W., a student with a disability,*

        Plaintiff,

- v -            Civ. No. 1:14-CV-1583
                 (DNH/RFT)

BOARD OF EDUCATION WALLKILL
CENTRAL SCHOOL DISTRICT,

        Defendant.

**APPEARANCES:**        **OF COUNSEL:**
OFFICE OF BENJAMIN J. HINERFELD  BENJAMIN J. HINERFELD, ESQ.
*Attorney for Plaintiffs*
2 Penn Center, Suite 1020
1500 JFK Blvd.
Philadelphia, Pennsylvania 19102

GINA DECRESCENZO, P.C.     GINA DECRESCENZO, ESQ.
*Attorney for Plaintiffs*
180 South Broadway, Suite 302
White Plains, New York 10605

THOMAS, DROHAN, WAXMAN,   NEELANJAN CHOUDHURY, ESQ.
PETIGROW & MAYLE, LLP
*Attorney for Defendant*
2517 Route 52
Hopewell Junction, New York 12533

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

  Plaintiffs bring this action, pursuant to the Individuals with Disabilities

Education Improvement Act of 2004 (the "IDEA"), 20 U.S.C. § 1415(i)(2)(A), as well as other federal and statutory provisions,[1] seeking a review of the final administrative decision rendered by the New York State Review Officer ("SRO") on September 19, 2014, which substantively denied them full tuition reimbursement for infant B.W.'s placement at Kildonan School ("Kildonan"), a private school. Dkt. No. 1, Compl., at ¶¶ 1-2. Recently, Wallkill Central School District ("Wallkill") filed its Second Amended Answer with Counterclaims. Dkt. No. 13.

Presently before the Court is Plaintiffs' Motion, entitled "Stay Put," seeking an automatic injunction, pursuant to 20 U.S.C. § 1400 *et seq.*, deeming Kildonan as B.W.'s current educational placement under the IDEA, and directing Wallkill to reimburse the Plaintiffs in the amount of $19,200, for B.W.'s tuition, and to pay Kildonan $47,000, the amount of the financial aid, for the 2014-2015 school year. Dkt. No. 11, Pls.' Mot., dated Mar. 5, 2015. Wallkill opposes the Motion. Dkt. No. 14, Def.'s Mem. of Law, dated Mar. 20, 2015. Plaintiffs have filed a Reply Memorandum of Law. Dkt. No. 15.

## I. BACKGROUND

---

[1] The other federal and state law causes of action are New York State Education Law section 4404, *et seq.*, Section 504 of the Rehabilitation Act ("504"), 29 U.S.C. § 749(a), and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. *See* Dkt. No. 1, Compl. at ¶ 2. Nonetheless, the principal statute at stake in this Motion is the IDEA.

To put this Motion into proper context, a recitation of the facts are warranted. Indeed, there is relatively no disagreement between the parties as to the germane facts in this litigation.[2]

B.W. is diagnosed with learning disabilities, dyslexia, and behavioral deficits. During his juvenile and adolescent years, he attended public schools with a history of poor performance. Not only was he having difficulty focusing on his academics but he also displayed troubling behavior management issues at school. In 2010, to address his dyslexia and other development issues, B.W. was evaluated by both the school district and other private professionals in order to develop an educational plan for him. In the interim, during the summer of 2010, B.W. attended a summer camp operated by Kildonan that had a summer program for children with dyslexia. During the school year of 2010-11, B.W. attended Wallkill's public school, receiving special education services under a § 504 plan. Not satisfied with the § 504 plan, and, because in their view B.W.'s performance had worsened, Plaintiffs unilaterally placed B.W. with Kildonan for the 2011-12 school year, and he has been attending Kildonan ever since.

Taking the position that Wallkill was not providing B.W. with a free

---

[2] The following facts are drawn from the Plaintiffs' Complaint and the State Review Officer's (SRO) Decision. *See* Dkt. Nos. 1, Compl., & 1-2, SRO's Dec., dated Sept. 16, 2014.

appropriate public education ("FAPE"), on September 24, 2013, Plaintiffs filed a Request for an Impartial Hearing ("Due Process Complaint") with Wallkill.[3] The Due Process Complaint alleged that Wallkill failed to provide B.W. with a FAPE during the 2011-2012, 2012-2013, and 2013-2014 school years. An Impartial Hearing was held before an Impartial Hearing Officer ("IHO") from January 29, 2014 to April 24, 2014. In a decision, dated June 20, 2014, the IHO found, applying the *Burlington/Carter*[4] analyis, that the district failed to offer the student a FAPE due to cumulative procedural violations from 2010 to 2014. Regarding the unilateral placement of B.W. at Kildonan, the IHO found that this placement was appropriate. Accordingly, the IHO ordered tuition reimbursement for the amount paid by Plaintiffs during the 2011-2012, 2012-2013, and 2013-2014 school years.

On July 22, 2014, Wallkilll filed a petition to the SRO to review the IHO's decision. In an opinion, dated September 19, 2014, the SRO affirmed in part and reversed in part the IHO's decision. The SRO affirmed that portion of the IHO's decision awarding Plaintiffs full tuition reimbursement for the academic year 2011-2012 to Kildonan. Dkt. No. 1-2, SRO Dec., dated Sept. 19, 2014, at p. 32. However,

---

[3] New York State has implemented a two-tiered system of administrative review.

[4] This analysis in named after the United States Supreme Court precedents *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359 (1985) and *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993).

the SRO determined "that during the 2012-13 school year . . . Kildonan was not an appropriate placement for the student. . . . [and was] unable to find that the student's placement at Kildonan for the 2013-2014 school year was appropriate." *Id*. at pp. 26 & 30.  Accordingly, the SRO modified by reversing the IHO decision, in part, and (1) found that the unilateral placement at Kildonan was not an appropriate placement for the student during the 2012-13 and 2013-14 school years; (2) ordered the district not to pay the cost of the student's tuition at Kildonan for the 2012-13 and 2013-14 school years; (3) directed the district not to prospectively fund the costs of the student's tuition at Kildonan for the 2011-12 school year; and (4) ordered the district to reimburse the parents for the costs of the student's tuition at Kildonan for the 2011-12 school year only.  *Id*. at pp. 32-33.  While the parties were awaiting the SRO's decision, Plaintiffs enrolled B.W. at Kildonan for the 2014-2015 school year, his fourth year at the school.  Dkt. Nos. 11, Mot., dated Mar. 6, 2015, at ¶ 23, & 11-3, Pls.' Mem. of Law, dated Mar. 6, 2015, at p. 1.  Plaintiffs acknowledged that "the parties have not agreed to another placement."  Dkt. No. 11 at ¶ 23.

Plaintiffs commenced this action in order to challenge the SRO's determination that Kildonan was not an appropriate placement for the 2012-2013 and 2013-14 school years.  *See* Compl.  And, Plaintiffs filed this Motion seeking "a determination that Kildonan is B.W.'s pendent or "Stay Put" placement under the IDEA and the

New York special education laws, and an order for Defendant to pay B.W.'s tuition at Kildonan during the pendency of this action," in the amount of $66,200. Pls.' Mem. of Law at pp. 2 & 10.

## II. APPLICABLE LAW

The Court commences this discussion with the caveat that when parents unilaterally change their child's school placement during the pendency of a review proceedings, without the consent of the state or local school officials, they "do so at their own financial risk." *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 373-74 (1985). Nevertheless, the IDEA directs that during the pendency of a review proceeding, unless the state or local educational agency and the parents agree otherwise, "the child shall remain in the then-current educational placement." 20 U.S.C. § 1415(j).[5] "This [statute] is, in effect, an automatic preliminary injunction . . . . that substitutes an absolute rule in favor of the status quo." *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982). Essentially, Congress wanted handicapped children to keep their existing educational program while the dispute over placement is ultimately resolved. *T.M. v. Cornwall Cent. Sch. Dist.*, 752

---

[5] The corresponding Code of Federal Regulations ("C.F.R.") states that "during the pendency of any administrative or judicial proceeding regarding a due process complaint . . . unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement." 34 C.F.R. § 300.518(a); *see also* N.Y. EDUC. LAW § 4404(4)(a) ("[T]he student shall remain in the then current educational placement of such student.").

F.3d 145, 170 (2d Cir. 2014) (citing *Mackey v. Bd. of Educ. of Arlington*, 386 F.3d 158, 160-61 (2d Cir. 2004)). This pendency provision "does not guarantee a disabled child the right to remain in the exact same school with the exact same service providers while his administrative and judicial proceedings are pending," but instead guarantees only the same general level and types of services that the disabled student was receiving. *Id*. at 170 (citations omitted). However, this provision requires the school district to continue funding the educational placement that "was last agreed upon for the child until the relevant administrative and judicial proceedings are complete." *Id*. (citing *Mackey v. Bd. of Educ*., 386 F.3d at 163).[6] We also need to keep in mind that "[a] claim for tuition reimbursement pursuant to the stay-put provision is evaluated independently from the evaluation of a claim for tuition reimbursement pursuant to the inadequacy of an [Independent Education Plan] IEP." *Mackey v. Bd. of Educ.*, 386 F.3d at 160.

The linchpin in this discussion is what is deemed to be the current educational placement or, in other words, the last agreed upon placement for the child. Normally, current placement is the most recently implemented IEP or when a final administrative decision by a state review board – in our case the SRO – agrees with the parents'

---

[6] The Second Circuit further stated that a school district will continue to finance an educational placement "consented to by the parent before the parent requested a due process hearing." *T.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014).

decisions about the placement of the disabled child. *Burlington v. Dep't of Educ.*, 471 U.S. at 372 (finding that an administrative decision in favor of the parents about the private placement constitutes an agreement by the state to the change of the placement); *Mackey v. Bd. of Educ.*, 386 F.3d at 163; 34 C.F.R. § 300.518(d)[7]; *see also Bd. of Educ. of the Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 483-85 (2d Cir. 2002) (noting that the statute "is a protective mechanism intended to maintain the last proper placement during the review of an IEP"). If parents succeed in their challenge of an IEP, consent to the private placement is implied by law. *Bd. of Educ. v. Schutz*, 290 F.3d at 484.

## III. DISCUSSION

Plaintiffs insist that the Court authorize Kildonan as the current educational placement for B.W. for the 2014-2015 school year and, if so determined, direct Wallkill to reimburse them for tuition that they have paid as well as Kildonan for the financial aid extended to the Plaintiffs. The total reimbursement bill would be

---

[7] The regulations state that

[i]f the hearing officer in a due process hearing conducted by the SEA or a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents for purposes of paragraph (a) of this section.

34 C.F.R. § 300.518(d).

In a two-tiered system such as New York, the State review official is the SRO. The Independent Hearing Officer ("IHO") decision does not constitute an agreement because it is not a state-level decision. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 86 F. Supp. 2d 354, 363-366 (S.D.N.Y. 2000).

$66,200. Pls.' Mem. of Law at p. 10. Principally relying upon a discrete portion of the SRO's September 14, 2014 Decision that found Kildonan as an appropriate placement for the 2011-2012 school year, Plaintiffs contend that the SRO's Decision qualifies as an agreement between the State and them as to the last agreed upon placement for B.W. *Id.* at p. 5 (citing to 34 C.F.R. § 300.518(d)); *see supra* note 7. Consequently, they argue that under the stay-put provision, Kildonan would remain the current placement for B.W., and Wallkill would be compelled to pay the tuition. *See generally* Pls.' Mem. of Law.

Wallkill exclaims that Plaintiffs have ignored the full ambit of the SRO's decision and have conveniently cherry-picked a narrow facet of the decision that tends to their favor while blithely discounting the overarching conclusion of the Decision. Contrary to Plaintiffs' perspective of the impact of the Decision, Wallkill draws the Court's attention to the fact that the SRO did not find Kildonan as an appropriate educational placement for the two most current school years of 2012-2013 and 2013-2014, and posits that 34 C.F.R. § 300.518(d) "does not allow for the parents' choice of placement to constitute pendency if the SRO determines the parents' choice of placement is no longer appropriate." Dkt. No. 14, Def.'s Mem. of law, dated Mar. 20, 2015, at p. 3. Wallkill simply contends that the true measure of the current placement revolves around the basic language of the regulation by pointing out that it states, in

part, that if a "State review official in an administrative appeal agrees with the child's placement that a change of placement **is** appropriate, that placement must be treated as an agreement between the State and the parents for purposes of paragraph (a) of this section." *Id*. at p. 3 (quoting 34 C.F.R. § 300.518(d)) (emphasis added by Defendant). Wallkill argues that the plain regulatory language must control. *Id*. at p. 6. *A fortiori*, the SRO does not agree with the placement of B.W. at Kildonan for the past two school years and therefore, there is no agreement between the State and the parents, who have unilaterally returned their child to Kildonan. Wallkill concludes by contending that "[s]ince the SRO determined that Kildonan is currently not an appropriate placement, and there was no prior administrative decision setting forth pendency, Plaintiffs are not entitled to reimbursement" for this current school year, and therefore ask that this Motion be denied. *Id*.

Plaintiffs gainsay each of Wallkill's positions. First, the Plaintiffs contend that "[t]he SRO nowhere held that Kildonan is not presently an appropriate place for B.W., [and] [t]hat the question was never addressed, as the due process hearing covered only the 2011-12, 2012-13, and 2013-14 school years." Dkt. No. 15, Pls.' Reply Mem. of Law, dated Mar. 27, 2015, at p. 2. But, this argument carries little to no weight. Plaintiffs' observation may be accurate, but it is for that very reason – the absence of a ruling on the current school years – why Plaintiffs are now pursuing the "Stay-Put"

Motion so that there will be a prospective determination as to the current placement.

Next, Plaintiffs contend that "the IDEA regulation's use of the past versus the present tense is incidental." *Id*. They argue that the very nature of a stay put determination is "backwards" looking and that IDEA decisions are retrospective and defined by the past tense, with the operative words being "was appropriate." *Id*. On this point, Plaintiffs rely upon *Mr. and Mrs A. v. N.Y.C. Dep't of Educ.*, 769 F. Supp. 2d 403 (S.D.N.Y. 2011), for the proposition that "[t]he parents choice should be evaluated by looking at the program at the time that the parents selected it." *Id*. at 418. However, Plaintiffs' reliance upon this quote is severely misplaced because, depending on the nature of the IDEA motion, there are two standards at play. The above-cited case is not a decision addressing a stay put motion but rather the overall litigation regarding tuition reimbursement. The Plaintiffs have conveniently overlooked that a claim for tuition reimbursement pursuant to a stay put motion is "evaluated independently" from the evaluation of a claim for tuition reimbursement based upon an inadequate IEP. *Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d at 160.

Pondering the parties' polemical arguments over the regulation's prose, the

Court finds that Wallkill prevails in this discussion.[8] The purpose of the stay put regulation is to define the current – that is the present – education placement for a disabled student, premised upon the last agreed upon placement which, depending on the SRO's decision, could be implied at law. Without a previous agreement, whether *defacto* or *de jure*, before commencing a due process hearing, ostensibly there is no last agreed upon placement.

If the purpose of the 20 U.S.C. § 4015(j) is to maintain the educational *status quo*, the Court submits that the status has yet to be determined or agreed upon. Prior to the Due Process Complaint, Plaintiffs moved B.W. unilaterally, without the consent of Wallkill, to Kildonan school. At that moment, there was no agreement between Plaintiffs and the school district as to an IEP. Thus, from 2011 to 2014, there was no agreement between the parties regarding B.W.'s placement. Additionally, there is no implied agreement at law, though this is a matter of first impression, the Court does not find that a consolidated decision, such as the SRO's Decision in this case, establishes an administrative decision in favor of the parents and that Plaintiffs' private placement constitutes an agreement by the State to the change of B.W.'s public school placement. Under these circumstances, where concurrent rulings are at

---

[8] In actuality, a fact finder must look retrospectively at the record, but the eventual outcome becomes current, transposing the past tense to the present tense.

interplay within a fundamentally comprehensive decision, the Court finds it difficult to perceive the SRO's Decision as an agreement, but rather observes it as a repudiation of the Kildonan placement, notwithstanding the finding that the earliest year out of three school years at issue was an appropriate placement. Under the totality of circumstances, the predominance of the entire determination consequently affects the most current school year and what is considered to be the last agreed upon placement, which is none.[9] And it would be a fundamentally unfair reading of the Decision to allow a party to cling to a discrete portion of a comprehensive decision to achieve their preferred outcome while discarding the more significant portion of

---

[9] The proposal to dissect the SRO's Decision into smaller *seriatim* segments in order to appreciate the true context of the Decision is unpersuasive. Plaintiffs poses such a hypothetical that if the Decision was separated into independent decisions based upon each of the school years, the 2011-12 school year would, under this approach, be the last agreed upon placement, and thus controlling for this Motion. Pls.' Mem. of Law at 4. However, it was Plaintiffs who filed their Due Process Complaint consolidating multiple school years into a single complaint; this strategic approach vitiates the notion that a single discrete ruling within the decision trumps all other contrary rulings. The Court finds the proposed hypothetical neither analogous nor instructive.

Moreover, the Court does not find *Student X v. New York City Dep't of Educ.*, 2008 WL 4890440 (E.D.N.Y. Oct 30. 2008) analogous nor persuasive either. The facts in *Student X* are distinguishable from the facts in this case. *Student X* dealt with an unappealed administrative decision establishing an interim pendency order. That court concluded that
> [a]s a matter of law, Student X's pendency placement when this lawsuit was commenced was determined by the unappealed IHO decision in 2005. This remained Student X's pendency placement until Plaintiff failed to appeal the November 2007 [SRO] Decision [that disagreed with the child's parent about the adequacy of the March IEP].

*Id*. at * 28.

Here, the SRO has found Kildonan inappropriate and therefore cannot be deemed a pendency placement like in *Student X*. There is no prior decision in our case and the SRO did not establish pendency before Plaintiffs filed their Due Process Complaint. *See* 34 C.F.R. § 300.518(d).

that same decision which concurrently rendered a completely, overarching different result pertaining to the subject school years. To permit such a reading, as suggested by the Plaintiffs, would render the Decision a tactical nullity. Plaintiffs contend that the delay in issuing the SRO's Decision gives greater weight to their Stay Put Motion. Pls.' Mem. of Law at p. 9. Plaintiffs revealed that on June 20, 2014, the IHO issued a decision holding in their favor. And as previously noted, the SRO issued its Decision on September 19, 2014. Plaintiffs state that pending the SRO's decision, they relied upon the IHO's decision to enrol B.W. at Kildonan. Because his enrollment occurred before the SRO's Decision, Plaintiffs claim that they did not have a reasonable opportunity to withdraw B.W. from Kildonan and "locate a new placement that the SRO might subsequently deem 'appropriate.'" *Id*. Based upon the foregoing, Plaintiffs argue that "[t]he equitable purposes of the IDEA's Stay Put provision are not served by denying pendency funding to parents who rely upon an IHO's decision to leave their child in his current educational placement, only to be informed mid-year by the SRO that their placement is not appropriate." *Id*. at pp. 9-10.

Wallkill suggests that you cannot blame the SRO for a tardy decision because Plaintiffs had sought an extension during that administrative process extending the decision-making period. Def.'s Mem. of Law at p. 6. Wallkill further suggests it

doesn't make sense that the untimely SRO Decision actually prohibited Plaintiffs in making a determination on the enrollment for the present year. The school district opines that Plaintiffs would not have had any way of knowing how the SRO would rule, and whether the Decision would establish an agreement between the State and the parents. Therefore, Wallkill strongly intimates that because Plaintiffs tactically made their decision to enroll B.W., they consequently must endure the financial risks associated with that placement.

The Court does not find the Plaintiffs' argument convincing. As the Court noted above, when parents make a unilateral placement, without the consent of the State or the local school district, they do so at their own peril. *Burlington v. Dep't of Educ.*, 471 U.S. 359, 372 (1985). Here, that financial risk did not abate when Plaintiffs enrolled B.W. at Kildonan for the school year 2014-2015. The *status quo* remains as it did before the Due Process Complaint was filed, notwithstanding any purported equitable intent of the statute. Without an agreement on the IEP or a State SRO decision finding Kildonan as an appropriate placement, the financial consequence of that decision remains with Plaintiffs when they exercised their prerogative to continue B.W.'s education at Kildonan. Reliance upon the IHO's decision, in the interim, is unpersuasive. An IHO decision does not constitute an agreement to change B.W.'s placement with Kildonan, and until the SRO renders a

decision fully affirming the IHO's decision, there is no agreement pursuant to 34 C.F.R. § 300.514. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 86 F. Supp. 2d 354, 363-64 (S.D.N.Y. 2000).

Additionally, the Court does not find the circumstances in *Murphy v. Arlington* to be analogous, as Plaintiffs urges. In *Murphy*, the SRO decision was delayed nearly three months for "reasons unknown and without the consent of Plaintiffs." *Id*. at 367. Because of the decision, which determined that Kildonan was the student's current educational placement, the *Murphy* court found it unfair to penalize the Plaintiffs for the delay. *Id*. Here, Wallkill posits, which was not controverted, that Plaintiffs sought an extension of time, in order to oppose Wallkill's petition, until August 18, 2014, which invariably pushed the decision deadline out further than originally contemplated. Appreciating that the SRO is required to file a decision within thirty (30) days, in essence, the SRO did not fail to meet its statutory and regulatory obligation when the decision was rendered on September 19, 2014. Therefore, no equitable benefit is deserved under these circumstances.

## IV. CONCLUSION

For all of the reasons stated above, the Court finds that Plaintiffs have not sustained their burden of establishing that there was an agreement between the State and them with regard to the last agreed upon and current placement for B.W. From

the record before the Court, it appears that the last agreed upon placement occurred when B.W. was attending public schools. And, for these stated reasons, it is hereby

**RECOMMENDED**, that Plaintiff's Stay Put Motion, Dkt. No. 11, be denied; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: April 21, 2015
       Albany, New York

Randolph F. Treece
U.S. Magistrate Judge