UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

A.W. & N.W., individually and on behalf of
B.W., a student with a disability,

          Plaintiffs,

 -v-            1:14-CV-01583
                 (DNH/DJS)

BOARD OF EDUCATION OF THE WALLKILL
CENTRAL SCHOOL DISTRICT,

          Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:        OF COUNSEL:

OFFICE OF BENJAMIN J. HINERFELD  BENJAMIN J. HINERFELD, ESQ.
Attorneys for the Plaintiffs       GINA M. DECRESCENZO, ESQ.
2 Penn Center, Suite 1020
1500 JFK Boulevard
Philadelphia, PA 19102

THOMAS, DROHAN LAW FIRM    NEELANJAN CHOUDHURY, ESQ.
Attorneys for the Defendant
2517 Route 52
Hopewell Junction, NY 12533

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

**I.  INTRODUCTION**

  Plaintiffs A.W. & N.W., on behalf of their disabled child B.W., filed this action on December 29, 2014 against defendant Board of Education of the Wallkill Central School District (the "District") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1401, *et seq.*, Article 89 of the New York State Education Law, Section 504

of the Rehabilitation Act and Title II of the Americans with Disabilities Act ("ADA"). Plaintiffs seek review of a final administrative decision of the New York State Review Officer pursuant to which they sought tuition reimbursement from the District for the unilateral placement of B.W. in a private, residential school for the 2011-12, 2012-13 and 2013-14 school years.

Both parties have filed motions for summary judgment and have fully briefed such motions. Oral arguments were heard of September 1, 2016 in Utica, New York.

## II.     **FACTUAL BACKGROUND**[1]

Plaintiffs are the natural parents of B.W., a disabled student residing in Wallkill, New York. After noticing that B.W. struggled to complete written tasks and was acting out in class, plaintiffs requested that the District test B.W. during the 2009-2010 school year. The plaintiffs also sought private testing and, in March 2010, the founder of the Kildonan School in Amenia, New York ("Kildonan") determined that B.W. suffered from dyslexia. After being informed of such finding from plaintiffs and completing its own testing, the District's Committee on Special Education ("CSE") concluded that B.W. was ineligible for special education services in May 2010. The CSE reconvened in November 2010 and again found B.W. ineligible for special education services. In December 2010, B.W. was diagnosed with ADHD by his pediatrician, Dr. Ingrid Dodard. Upon such information being convened to the District, the District instituted a Section 504 Accommodation Plan whereby B.W. was placed in a reading and writing lab class in an attempt to remediate his reading and writing skills, as well as being provided other accommodations. However, he was not provide an Individualized Education Program ("IEP") at such time. In March 2011, B.W. was accepted

---

[1] The factual background is gleaned from the parties' Statements of Material Facts submitted pursuant to Northern District Local Rule 7.1.

into Kildonan for the following school year. Plaintiffs unilaterally placed B.W. in classes at Kildonan for the fall of 2011 as a boarding student.

In March 2012, B.W. was evaluated by the District's doctors and the District reviewed B.W.'s records from Kildonan. After such review, on May 18, 2012, the District determined that B.W. was a "qualified individual" pursuant to the IDEA based upon his ADHD diagnosis, but not his dyslexia. As a result, the District gave B.W. an Individualized Education Program ("IEP") based upon his "Other Health Impairments" classification and recommended that he be placed in an integrated co-taught ("ICT") program at Wallkill High School.

In August 2012, plaintiffs sent a letter to the District rejecting the District's IEP and requesting that the District pay for B.W.'s tuition and boarding costs for the 2011-12 and 2012-13 school years at Kildonan. B.W. attended Kildonan again for the 2012-13 school year. In April 2013, another meeting was held to discuss B.W.'s IEP for the 2013-14 school year. B.W. again attended Kildonan for the 2013-14 school year.

In September 2013, plaintiffs submitted a request for an impartial hearing to the District. An impartial hearing was held in 2014 and by decision dated June 20, 2014, the Impartial Hearing Officer ("IHO") found in favor of plaintiffs and directed the District to reimburse plaintiffs and Kilodonan. See ECF No. 1-1.

The District filed a petition to the New York State Review Officer ("SRO") in July 2014. By decision dated September 19, 2014, the SRO affirmed in part and reversed in part the IHO decision, awarding plaintiffs reimbursement only for the 2011-12 school year but denying reimbursement for the 2012-13 and 2013-14 school year. See ECF No. 1-2.

## III. **DISCUSSION**

*1. Standard of Review.*

Although the parties have styled their submissions to the Court as motions for summary judgment, the procedure is in substance an appeal from an administrative determination, not a summary judgment. Wall v. Mattituck–Cutchogue Sch. Dist._,_ 945 F. Supp. 501, 507–08 (E.D.N.Y. 1996). IDEA cases employ a different legal standard because "the existence of a disputed issue of material fact will not defeat the motion." J.R. v. Bd. of Educ. of the City of Rye Sch. Dist., 345 F. Supp. 2d 386, 394 (S.D.N.Y. 2004). The court "must engage in an independent review of the administrative record and make a determination based on a 'preponderance of the evidence.'" Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 108 (2d Cir. 2007) (quoting Mrs. B. v. Milford Bd. of Educ., 103 F.3d 1114, 1120 (2d Cir. 1997)). "While federal courts do not simply rubber stamp administrative decisions, they are expected to give due weight to these proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." M.S. v. Board of Educ. of the City Sch. Dist. of Yonkers, 231 F.3d 96, 102 (2d Cir. 2000).

*2. Relevant Legal Framework.*

Congress enacted the IDEA to promote the education of children with disabilities, "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs [and] ... to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1). A free appropriate public education ("FAPE") "must include special education and related services tailored to meet the unique needs of a particular child, and be reasonably calculated to enable the child to receive

- 4 -

educational benefits." Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998).

The key element of the IDEA is the development of an IEP for each disabled student, which includes "a comprehensive statement of the educational needs of a handicapped child and the specially designed instruction and related services to be employed to meet those needs." School Comm. of Burlington v.Department of Educ., 471 U.S. 359, 368 (1985). The IEP is collaboratively developed by the parents of the child, educators, and other specialists. See 20 U.S.C. § 1414(d)(1)(B). New York has set forth regulations to implement the goals of the IDEA, which track the IDEA closely. "In developing a particular child's IEP, a [District] is required to consider four factors: (1) academic achievement and learning characteristics, (2) social development, (3) physical development, and (4) managerial or behavioral needs." Walczak, 142 F.3d at 123.

If a district fails in its obligation to provide a FAPE to a disabled child, the parents may enroll the child in a private school and seek retroactive reimbursement for the cost of the private school from the state. See Burlington, 471 U.S. at 370; M.S., 231 F.3d at 102. In determining whether parents are entitled to reimbursement, the Supreme Court has established a two pronged test: (1) was the educational program proposed by the school district inappropriate; (2) was the private placement appropriate to the child's needs. See Burlington, 471 U.S. at 370. Moreover, because the authority to grant reimbursement is discretionary, "equitable considerations [relating to the reasonableness of the action taken by the parents] are relevant in fashioning relief." Burlington, 471 U.S. at 374; M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ., 226 F.3d 60, 68 (2d Cir. 2000).

Parents seeking reimbursement for a private placement bear the burden of demonstrating that the private placement is appropriate, even if the proposal in the IEP is

inappropriate. M.S., 231 F.3d at 104. Nevertheless, parents are not barred from reimbursement where a private school they choose does not meet the IDEA definition of a free appropriate public education. See 20 U.S.C. § 1401(9). An appropriate private placement need not meet state education standards or requirements. See Florence Cnty. School Dist. Four v. Carter, 510 U.S. 7, 14 (1993). For example, a private placement need not provide certified special education teachers or an IEP for the disabled student. Id.

In New York, parents seeking reimbursement for private school tuition may request a hearing before an IHO. The decisions of an IHO may be appealed to the SRO. See N.Y. EDUC. L. § 4404. Under the IDEA, the final administrative decision of the state, in New York the SRO decision, may be reviewed by a federal district court. See 20 U.S.C. § 1415(i)(2)(A). The district court may review the administrative record, hear additional evidence, and grant such relief it deems appropriate. See 20 U.S.C. § 1415(i)(2)(C).

*3. The District failed to provide B.W. a Free Appropriate Public Education.*

The District contends that B.W. was not eligible for special education services during the 2011-2012 school year and that the IEPs completed for the 2012-2013 and 2013-2104 school years provided B.W. with a FAPE. However, such argument is unpersuasive.

As both the IHO and the SRO found, while B.W. tested in the average range on various standardized tests, the District possessed significant information concerning B.W.'s functional impairments at the time it deemed B.W. ineligible for special education services in May 2010 and December 2010. This included a history of behavioral difficulties, deficiencies in preparation, focus and attention and academic struggles. The District was also aware of B.W.'s diagnoses of dyslexia and ADHD and failed to consider what affect such conditions may have of his academic difficulties and his disruptive behaviors. As a

result, the failure of the District to have an IEP in place by the start of the 2011-2012 school year constituted a denial of a FAPE to B.W.

Similarly, the IEPs developed for B.W. in May 2012 and April 2013 failed to provide him a FAPE. Under the IDEA, a district may be required to consider special factors in the development of a student's IEP, including whether behavior impedes his learning or that of others. See 20 U.S.C. 1414(d)(3)(B)(i). Where such behavior may impede learning, the district may consider having a functional behavior assessment ("FBA") conducted and a behavioral intervention plan ("BIP") developed for a student. See 8 NYCRR 200.4(d)(3)(i).

While the District did not conduct a FBA nor implement a BIP, it contends that the IEPs properly addressed B.W.'s behavior and its possible affect on his learning. However, as both the IHO and SRO found, the IEPs did not reflect B.W.'s classroom functioning and needs. The administrative record reflects that B.W.'s behavior was erratic, that he lacked focus and self control, rushed assignments and possessed poor organizational skills. Therefore, the District was in possession of information demonstrating that B.W.'s significant interfering behaviors and work avoidance behaviors affected his ability to perform in the classroom. The IEPs does not adequately address B.W.'s behavioral needs. As a result, the District did not provide B.W. a FAPE for the 2012-13 and 2013-14 school years.

*4. Kildonan Was An Appropriate Program for B.W.*

The IHO determined that Kildonan was an appropriate program for B.W. for the 2011-12, 2012-13 and 2013-2014 school years. However, the SRO concluded that Kildonan was only an appropriate program for the 2011-12 school year and not appropriate for the 2012-13 and 2013-14 school years. The SRO found that the during the 2011-12 school year, B.W.'s first year at the school, he continued to exhibit many of the negative

behaviors which were adversely affecting his ability to perform in the classroom. The SRO determined that the administrative record did not support a finding that Kildonan adequately planned or addressed such behaviors and their affect on B.W.'s academic performance. As a result, the SRO concluded that Kildonan was not an appropriate program for the second and third years of B.W.'s enrollment.

The Second Circuit has found that "[n]o one factor is necessarily dispositive in determining whether parents' unilateral placement is reasonably calculated to enable the child to receive educational benefits." Gagliardo v. Arlington Central School Dist., 489 F.3d 105, 112 (2d Cir. 2007). "To qualify for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential. They need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction." Id.

Both the IHO and the SRO noted that Kildonan is a school designed for students with dyslexia and provided an appropriate educational program to address B.W.'s deficiencies related to his dyslexia. This was in part accomplished by having small class sizes, averaging 8-12 students in most subjects and 5-6 for math instruction. Each student also receives a daily 45 minute 1 on 1 tutorial which utilizes the Orton-Gillingham methodology, a learning approach to address reading, writing and spelling needs in dyslexic students, with individualized instruction tailored to B.W.'s particular needs. In addition, such tutors identified specific accommodations that were required for each student and worked with B.W.'s classroom teachers to implement such accommodations. As students at Kildonan are residential, B.W. also participated in a two hour study hall six evenings per week, proctored by a teacher from the regular staff, designed to carry over

the support required. B.W. also utilized assistive technology to structure his writing into a more visual web design. Kildonan additionally provides a special session once a month to address issues pertinent to those suffering from dyslexia.

The SRO found that while B.W. had low confidence and fear of academic failure and exhibited by many work avoidance behaviors, Kildonan did not offer counseling services, refer B.W. for outside counseling or otherwise address B.W. negative behaviors through such methods as positive reinforcement or a BIP. See ECF 1-2 at 24. Plaintiffs argue that while Kildonan did not have BIP in place for B.W., its general approach, including smaller class sizes, 1 on 1 tutoring, proctored study halls permitted it to tailor its instruction to B.W. and address his behavioral issues. Further, they assert that B.W.'s behavioral issues were a manifestation of his academic struggles and low confidence such that as Kilodonan's education program improved his academic performance, B.W.'s behavioral issues would diminish.

Although it did not have a formal BIP, a review of the administrative record demonstrates that Kildonan did attempt to address B.W.'s work avoidance behaviors. Kildonan's small class size permitted teachers to address B.W.'s behavioral issues in a more meaningful and direct way. See ECF No. 1-1 at 72. Further, the 1 on 1 daily tutoring provided to B.W. with specially designed instruction to address his academic needs, including his behavioral deficiencies. The SRO notes that B.W.'s "ability to function with regard to his effort and cooperation was significantly more successful in a 1:1 setting than when he was in a classroom setting." See ECF No. 1-2 at 24. Such teachers and tutors had greater familiarity with B.W.'s deficiencies and preferences, permitting them to redirect him more effectively. While B.W.'s behavioral issues did not stop completely when he enrolled at Kildonan, the SRO acknowledges that Kildonan's tutors were implementing

informal strategies to address his lack of effort. Id. at 26.

Further, while the SRO does note that B.W. behavior was inconsistent, the administrative record does reflect that in the totality of the circumstances, B.W. exhibited both academic and behavioral progress while at Kildonan. As the IHO concluded, the administrative record demonstrates that B.W. behaviors diminished in terms of frequency and intensity and did not impact his learning to the extent they previously did.

For the foregoing reasons, Kildonan provided B.W. with an educational program that was specifically designed to meet his unique needs. Therefore, B.W.'s placement at Kildonan was appropriate for the 2011-12, 2012-13 and 2013-14 school years.

*5. Equitable Considerations Favor Plaintiffs.*

The IDEA provides that reimbursement may be reduced or denied when parents fail to raise the appropriateness of an IEP in a timely manner, fail to make their child available for evaluation by the district, or upon a finding of unreasonableness with respect to the actions taken by the parents. See 20 U.S.C. § 1412(a)(10)(C)(iii).

The District contends that plaintiffs failed to provide notice of their intention to unilaterally place B.W. at Kildonan for the 2011-12 school year. Further, defendant argues that plaintiffs failed to disclose additional testing prior to a June 2013 meeting. Neither is a sufficient basis to reduce or deny reimbursement.

*6. Statute of Limitations.*

The District also argues that reimbursement for the 2011-2012 school year should be denied as being beyond the statute of limitations period. Plaintiffs filed the initial hearing request on or about September 24, 2013, however, defendant contends that plaintiffs were awarded financial aid by Kildonan in March 2011 and enrolled B.W. there on July 11, 2011. However, as defendant did not raise such argument at the SRO level, it was abandoned.

See M.Z. v. New York City Dep't of Educ., 2013 U.S. Dist. LEXIS 47052 (S.D.N.Y. Mar. 21, 2013).

*7. Tuition Reimbursement.*

The District further contends that since Kildonan offered financial assistance to plaintiffs reducing the amount of tuition owed, plaintiffs have failed to demonstrate that they are legally obligated to pay such tuition and therefore, the amount of such financial assistance is not recoverable under the IDEA.

The IDEA affords hearing officers the power to award direct payment to schools that, at their own financial risk, front the costs of tuition to parents with the expectation that those parents will seek to recover tuition in litigation. See E.M. v. New York City Dept. of Ed., 758 F.3d 442, 452-53 (2d Cir. 2014). Such result is consistent with the purpose of the IDEA as it permits parents with limited financial means to utilize the withdrawal option. Id. at 454. As a result, plaintiffs are entitled to full reimbursement for the cost of tuition at Kildonan for the 2011-12, 2012-13 and 2013-2014 school years, in the sum of $187,000.

*8. ADA & Rehabilitation Act.*

Lastly, the District alleges that plaintiffs have failed to establish a claim under Section 504 of the Rehabilitation Act or Title II of the ADA.

"Since Section 504 relief is conditioned on a showing of discrimination, it requires something more than proof of a mere violation of IDEA . . ." Gabel ex. Rel. Bd. of Educ. Of Hyde Park Cent. Sch. Dist., 368 F. Supp. 2d 313, 334 (S.D.N.Y. 2005). A plaintiff must demonstrate that the school district acted with bad faith or gross misjudgment. See Butler v. South Glens Falls Cent. Sch. Dist., 106 F. Supp. 2d 414, 420 (N.D.N.Y. 2000). The same analysis applies for the ADA. See French v. New York State Dept. of Educ., 476 Fed. Appx. 468, 472 (2d Cir. 2011).

Plaintiffs contend that the failure to proper classify B.W. and provide an IEP is evidence of gross misjudgment supporting such claims. However, something more than a mere violation of the IDEA is necessary to make out a claim under Section 504 or Title II. Plaintiffs have provided no evidence that the IDEA violations occurred as a result of discrimination against B.W. based upon his disability. As a result, the Rehabilitation Act and ADA claims will be dismissed.

9. *Punitive Damages.*

The complaint also seeks punitive damages against defendant. However, punitive damages are unavailable under the IDEA. See Polera v. Bd. of Educ. of Newburgh City Sch. Dist., 288 F.3d 478, 484 (2d Cir. 2002). Further, punitive damages may not be imposed against a school district, as the eleventh amendment bars such action. See Hiller v. Bd. of Educ. of the Brunswick Cent. Sch. Dist., 687 F. Supp. 735, 745 (N.D.N.Y. 1988) (C.J. McCurn). Therefore, plaintiff's request for punitive damages will be denied.

10. *Attorneys' Fees and Costs.*

The IDEA grants courts the discretionary power to "award reasonable attorneys' fees . . . [to] the prevailing party" "[i]n any action or proceeding brought under" the IDEA. 20 U.S.C. § 1415(i)(3)(B). Such fees "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). The IDEA feeshifting provisions are interpreted in the same manner as other civil rights fee-shifting statutes. See A.R. ex rel. R.V. v. New York City Dept. of Educ., 407 F.3d 65, 73 (2d Cir.2005). In order to be considered a "prevailing party" for purposes of a federal fee-shifting statute, a plaintiff must "achieve some material alteration of the legal relationship of the parties," and "that change must also be judicially sanctioned."

Id. at 67.

Plaintiffs are the prevailing party and are entitled to reasonable attorneys' fees and costs. Plaintiffs shall submit an appropriate affidavit and supporting evidence to substantiate a request for reasonable attorneys' fees and costs.

**IV. CONCLUSION**

For the reasons stated, the District failed to provide B.W. with a free appropriate public education in violation of the IDEA for the 2011-12, 2012-13 and 2013-14 school years. Further, the Kildonan School was an appropriate program for B.W. for all three school years and equitable considerations favor plaintiffs. Plaintiffs' request for tuition reimbursement in the amount of $187,000.00 will be granted.

Therefore, it is ORDERED that:

(1) Plaintiff's motion for summary judgment is **GRANTED** in part and **DENIED** in part; (2) Defendant's motion for summary judgment is **GRANTED** in part and **DENIED** in part;

(3) Plaintiff's Rehabilitation Act, ADA and punitive damages claims are **DISMISSED**;

(4) Judgment is **GRANTED IN FAVOR** of plaintiffs with respect to their IDEA claim and Article 89 claim for tuition reimbursement for the 2011-12, 2012-13 and 2013-14 school years in the amount of $187,000.00;

(5) Plaintiffs may submit detailed documentation concerning method of payment; their claims for reasonable attorneys' fees, costs and interest on or before **September 26, 2016**; and

(6) The defendant may submit detailed documentation in opposition on or before **October 11, 2016**. Thereafter, a final judgment will be entered.

IT IS SO ORDERED.

_____
United States District Judge

Dated: September 12, 2016
      Utica, New York